# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LISA BLACKSTON, | : | |
| | : | |
| Appellant, | : | |
| | : | C.A. No. K25A-08-001 JJC |
| v. | : | |
| | : | |
| DELAWARE DEPARTMENT OF | : | |
| HEALTH AND SOCIAL SERVICES, | : | |
| DIVISION OF SOCIAL SERVICES, | : | |
| | : | |
| Appellee. | : | |

Submitted: February 10, 2026
Decided:   February 12, 2026

## <u>ORDER</u>

On this 12th day of February 2026, having considered Appellant Lisa Blackston's appeal of the decision of the Delaware Department of Health and Social Services, Division of Social Services (hereinafter, both the Department and Division are collectively referred to as "DHSS"), and DHSS's response, it appears that:

1.      Ms. Blackston's appeal challenges a DHSS hearing officer's decision upholding the denial of her household's Supplemental Nutrition Assistance Program ("SNAP") renewal application.  DHSS terminated her food benefits because she refused to provide sufficient information to verify her eligibility.  In turn, she challenged that denial at a "fair hearing" guaranteed by federal and state law.[1]  A hearing officer upheld the denial.  She now appeals that decision.

---

[1] *See* 7 U.S.C. § 2020(e)(10) (requiring state plans to provide "a fair hearing and prompt determination thereafter" to any household aggrieved by the state agency); *see also* 7 C.F.R. § 273.15(a) ("Except as provided in § 271.7(f), each State agency shall provide a fair hearing to any household aggrieved by any action of the State agency which affects the participation of the household in the Program."); 16 Del. Admin. C. § 5001.1 ("An opportunity for a fair hearing will

2. SNAP is a federal program designed to alleviate hunger and malnutrition by providing food benefits to low-income individuals and families.[2] Federal law delegates administration of the program to state agencies subject to a myriad of federal requirements.[3]  In Delaware, DHSS is the designated state-level agency charged with administering SNAP benefits.[4]

3. The Federal Food Stamps Act sets income and financial resource limitations for SNAP participation.[5]  As Delaware's agency-designee, DHSS must develop and implement eligibility requirements and then certify the eligibility of all applicants.[6]  Federal regulations—and Delaware State regulations promulgated consistently with those regulations—require new and renewal applicants to cooperate with DHSS's efforts to verify their eligibility.[7]  Delaware regulations expound on these requirements by requiring DHSS to "[u]se documentary evidence

be provided, subject to the provisions of this section, to any individual requesting a hearing who is dissatisfied with a decision of the Division of Social Services . . . .").

[2] U.S. DEP'T OF AGRIC. FOOD AND NUTRITION SERV., FACTS ABOUT SNAP (Jan. 24, 2024); *see also* 7 U.S.C. § 2011 ("To alleviate such hunger and malnutrition, a supplemental nutrition assistance program is herein authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.").

[3] 7 U.S.C. § 2020(a)(1) ("The State agency of each participating State shall have responsibility for certifying applicant households and issuing EBT cards."); *see also* 79 Am. Jur. 2d *Welfare* § 28 ("States must adhere to federal standards when implementing SNAP.").

[4] *See* 31 *Del. C.* § 601(a) ("The Department [of Health and Social Services] shall bear the responsibility of administering the food stamp program for the State in compliance with the provisions of the Federal Food Stamp Act of 1964 [7 U.S.C. §§ 2011 et seq.], as amended."); *see also* 7 C.F.R. § 271.4(a)(1)-(7) (itemizing a state agency's responsibilities when administering SNAP within the state).

[5] 7 U.S.C. § 2014(a) ("Participation in the supplemental nutrition assistance program shall be limited to those households whose incomes and other financial resources, held singly or in joint ownership, are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet.").

[6] 31 *Del. C.* § 603(1)-(8) (outlining the facets of the food stamps program that DHSS is responsible for).

[7] 7 C.F.R. § 273.2(f)(5)(i) ("The household has primary responsibility for providing documentary evidence to support statements on the application and to resolve any questionable information."); 16 Del. Admin C. § 9035.1 (same).

as the primary source of verification for all items except residency and household size."[8] On one hand, both federal and Delaware law clarify that acceptable verification of income is not restricted to the consideration of any single type of document – it can be verified through varied sources.[9] On the other hand, the burden remains on the applicant to submit sufficient information to permit verification.[10]

4.      This appeal challenges the hearing officer's finding that Ms. Blackston failed to meet her obligations to support her application.[11] She contends that the hearing officer erred when she concluded that the two bank statements she submitted were inadequate.[12] DHSS counters that those bank statements did not identify the source of the payments made to Ms. Blackston or her income.[13] DHSS also emphasizes that it provided her multiple chances to verify her income by alternative means, but she declined to do so.

5.      The hearing record contains the following evidence. On February 1, 2025, DHSS sent Ms. Blackston a "Food Benefits Renewal Letter, Notice of Expiration for Food Benefits," advising her that she would need to submit a renewal application for food benefits by March 1, 2025, or face termination of her benefits on March 31, 2025.[14] Ms. Blackston submitted her renewal application on March

---

[8] 16 Del. Admin. C. § 9034.1 ("Use documentary evidence as the primary source of verification for all items except residency and household size."); *see also* 7 C.F.R. § 273.2(f)(4)(i) (requiring through federal regulation that "[s]tate agencies shall use documentary evidence as the primary source of verification for all items except residency and household size").

[9] 7 C.F.R. § 273.2(f)(4)(i) ("Although documentary evidence shall be the primary source of verification, acceptable verification shall not be limited to any single type of document and may be obtained through the household or other source."); 16 Del. Admin. C. § 9034.1 (same).

[10] 7 C.F.R. § 273.2(f)(5)(i) ("The household has primary responsibility for providing documentary evidence to support statements on the application and to resolve any questionable information."); 16 Del. Admin. C. § 9035.1 (same).

[11] *In re: Lisa Blackston*, No. 7002297873, at 3 (Del. Dep't of Health and Soc. Servs. July 25, 2025) [hereinafter, the Court will refer to the Hearing Officer's decision as "*Hearing Officer Decision* at . . ." and will refer to exhibits submitted during the Fair Hearing as "Hr'g Tr. Ex. . . ."].

[12] D.I. 10 at 3.

[13] D.I. 19 at 9.

[14] Hr'g Tr. Ex. 3.

20, 2025, which DHSS accepted despite its untimeliness.[15] The application directed her to "[c]heck each type of income your household receives each month[.]"[16] There, she checked "Other" and hand wrote "gig (SIDE) work. No pay stubs" and "up to $841 a mth" in the margin.[17] Ms. Blackston contends that she never received a follow-on "Verification Request" from DHSS that would have been necessary to enable DHSS to determine the accuracy of her representations.[18] To that end, DHSS's representative testified at the hearing that (1) she informed Ms. Blackston that she needed to submit further information to support her application, (2) she followed-up repeatedly with Ms. Blackston to get that information, but (3) Ms. Blackston never provided it.[19]

6.      The record includes somewhat conflicting evidence regarding the sequence of events that followed a March 31, 2025, missed phone interview between DHSS and Ms. Blackston. Regardless of whether Ms. Blackston had notice of the interview, there is no dispute in the record regarding the important facts. Specifically, Ms. Blackston submitted only limited documents in support of her renewal application. They included two City of Dover utility bills,[20] a screenshot of her EBT transaction history,[21] and *two monthly bank statements with a number of deposit entries blacked-out.*[22] The bank statements reflected a number of deposits attributed to "Driver," with no additional information.[23] A DHSS representative believed—perhaps erroneously—that Ms. Blackston drove for DoorDash based on

---

[15] Hr'g Tr. Ex. A2 at 5; Hr'g Tr. at 12:15-17.
[16] Hr'g Tr. Ex. A2 at 5.
[17] *Id.*
[18] D.I. 10 at 1.
[19] Hr'g Tr. at 12:10-23; *id.* at 14:9-16; Hr'g Tr. Ex. 5.
[20] Hr'g Tr. Ex. 7.
[21] *Id.*
[22] Hr'g Tr. Ex. 8.
[23] *See, e.g., id.* at 30.

Ms. Blackston's description of her work.[24]  Ms. Blackston fixated on that alleged error in the hearing and maintains that focus on appeal.  Despite any such mistake, there is no evidence in the record that Ms. Blackston provided *any* additional information to explain the source of her income or her rate of pay (i.e., by the hour or by the trip).  DHSS could not adequately calculate or confirm her monthly average income in the absence of such information.[25]

7.  The record also contains an email between Ms. Blackston and the DHSS employee who attempted to verify her eligibility.[26]  In that exchange, the DHSS representative explained to Ms. Blackston that she had to submit a written statement identifying whose account she was delivering for and how much she was being paid so DHSS could take steps to verify her income.[27]  Ms. Blackston refused to comply with that request.  That is, she limited her response to the following: "I do NOT work for DoorDash.  However, I do make deliveries."[28]  In total, she refused to identify the source of the payments or her rate of pay at any time from the submission of her initial application through the conclusion of the fair hearing.[29]  She vigorously maintained—and still maintains on appeal—that the bank statements satisfied her obligation.[30]

8.  Given this record, the hearing officer determined that Ms. Blackston failed to provide information necessary for DHSS to validate her income.[31]  As a result, the hearing officer affirmed DHSS's decision to deny her benefits.[32]  Ms.

---

[24] Hr'g Tr. Ex. 9.
[25] Hr'g Tr. 18:21-19:2.
[26] Hr'g Tr. Ex. 9.
[27] *Id.*
[28] *Id.*
[29] Hr'g Tr. 18:23-24; *id.* at 13:12-16.
[30] D.I. 10 at 3.
[31] *Hearing Officer Decision* at 3.
[32] *Id.*

Blackston now appeals that decision to the Superior Court as permitted by 31 *Del. C.* § 520 ("Section 520").

9.  Under Section 520, a claimant for public assistance may appeal a DHSS decision—here, a fair hearing decision—to the Superior Court if the claimant (1) is subject to an adverse DHSS decision regarding benefits and (2) suffers financial harm as a result.[33] The appeal must be filed within 30 days of the final administrative decision and "shall be on the record without a trial *de novo*."[34] Section 520 requires the Court to "decide all relevant questions and all other matters involved, and to sustain any factual findings of the administrative hearing decision that are supported by substantial evidence on the record as a whole."[35] Evidence is substantial if a reasonable mind could accept such evidence as adequate to support the conclusion.[36] It is axiomatic that the Court is unable to resolve issues of witness credibility on an appellate record.[37]

10.  Here, DHSS denied Ms. Blackston's renewal application because she refused to submit information necessary to determine her SNAP eligibility. At a high and singularly dispositive level, the record contains substantial evidence to support the hearing officer's decision based upon the DHSS employee's testimony alone. The representative explained that Ms. Blackston's bank statements were inadequate to verify her income because they did not "provide the employer['s] name; it does not indicate the pay rate; it does not indicate the frequency of pay; and it does not have the gross amount."[38] She further testified that she contacted Ms.

---

[33] 31 *Del. C.* § 520.

[34] *Id.*

[35] *Id.*; *Prunckun v. Del. Dep't of Health and Soc. Servs.*, 201 A.3d 525, 539 (2019).

[36] *Prunckun*, 201 A.3d at 540; *see also Ringgold v. Del. Dep't of Health and Soc. Servs.*, 2018 WL 7021956, at *1 (Del. Super. July 27, 2018) ("The Court is not to replace the trier of fact in an appeal of an administrative board decision.").

[37] *Christman v. Del. Dep't of Health and Soc. Servs.*, 2013 WL 7212063, at *3 (Del. Super. Jan. 28, 2013).

[38] Hr'g Tr. at 16:6-10.

Blackston multiple times to provide her an opportunity to assist with the verification.[39] Ms. Blackston neither provided the information before the fair hearing nor at it.[40] Accordingly, the record contains substantial evidence to support the hearing officer's decision.

11.     Ms. Blackston contends that DHSS should have made further accommodations for her because she was a "non-W-2 employee." The Court has fully considered this argument which touches on an important aspect of the SNAP verification process. Specifically, DHSS cannot—and did not in this case—limit income verification to tax documentation alone. Indeed, DHSS provides applicants considerable flexibility regarding what types of alternative documentation and proof of income, apart from W-2s and 1099s, may meet an applicant's obligations. Notwithstanding such flexibility, there remains a rigid requirement under federal and state law for DHSS to verify a SNAP applicant's income by some means.[41]

12.     In this case, Ms. Blackston's failure to cooperate prevented DHSS from doing so on at least two bases. First, DHSS had the obligation to verify and calculate her average monthly income, which could fluctuate from month to month.[42] Two bank statements, without further verification, are insufficient to permit such a calculation. Thus, DHSS acted reasonably when it insisted on more than two months of deposit confirmations found in statements from a single bank account. In other

---

[39] Hr'g Tr. at 12:15-23.
[40] *See id.* at 23:7-20 (wherein Ms. Blackston acknowledged that she communicated with the DHSS representative by phone and email).
[41] *See* 7 U.S.C. § 2036c(a)(1)-(2) (requiring state agencies to submit annual report verifying that the agency has not issued benefits to deceased individuals or disqualified individuals); *see also* 31 *Del. C.* § 603(2) (requiring DHSS to "[c]ertify applicant, individuals and households"); 7 C.F.R. § 273.2(f)(1)(i) ("Gross nonexempt income *shall* be verified for all households prior to certification.") (emphasis added).
[42] 16 Del. Admin. C. § 9063.3; *see also* 7 C.F.R. § 273.10(c)(3) (explaining how State agencies should calculate average monthly income to determine eligibility in some circumstances).

words, DHSS did not act arbitrarily by requiring her to provide additional information.

13. Second, Ms. Blackston refused to identify the source of the payments identified only as "Driver" in the deposit records, which in turn, prevented DHSS from *verifying* her income. The record contains clear examples of this refusal through the testimony of the DHSS representative referenced above. In addition, an email chain between Ms. Blackston and a DHSS representative confirms the same. Specifically, the representative emailed Ms. Blackston and explained how she could verify her eligibility as a "non-W-2 employee."[43] Ms. Blackston never revealed the source of her direct deposits in response. She merely *insisted that the deposits did not come from DoorDash.* Again, that response—or lack thereof—left DHSS no means of *verifying* her income. On balance, DHSS neither committed an error of law, nor acted arbitrarily when it declined to accept Ms. Blackston's renewal application at face value. Likewise, the fair hearing record contains substantial evidence to support that Ms. Blackston had multiple opportunities to cooperate with the verification process but refused to do so.[44]

14. Ms. Blackston raises a final set of concerns in her supplemental brief that do not change the result. In her reply brief, she wrote that she had not had an opportunity to review the certified record from below.[45] She also contested whether DHSS produced a *certified* record on appeal. Given those concerns and her *pro se* status, the Court provided her a further opportunity (1) to review the certified record filed by the agency, and (2) to file a supplemental brief.[46] She then filed her

---

[43] Hr'g Tr. at 17:11-16.
[44] *See* 7 C.F.R. § 273.15(p)(6) (stating that the applicant must be given an opportunity to "[s]ubmit evidence to establish all pertinent facts and circumstances in the case" at the fair hearing); 16 Del. Admin. C. § 5404.D (same).
[45] D.I. 22 at 1.
[46] D.I. 26.

concluding brief on February 10th. In it, the only *new* arguments she raises are challenges to the accuracy or truthfulness of several pieces of testimony in the hearing transcript.

15.    Those supplemental arguments have no impact on the Court's decision. At the outset, the fair hearing transcript was certified as a true and accurate reflection of the hearing.[47] The Court must accept it as accurate and complete, in this "on the record appeal," absent extraordinary circumstances that are not present here. Moreover, the alleged transcription errors and inaudible entries that she focuses on would not change the result in this substantial evidence review. Finally, Ms. Blackston's contentions that the DHSS representative testified falsely does not change the result. It was the hearing officer who was empowered to resolve issues of credibility. On this record, she permissibly deemed the DHSS representative credible, she afforded controlling weight to the representative's testimony, and she based her decision on substantial evidence.

**WHEREFORE**, for the reasons above, DHSS's fair hearing decision is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

---

[47] Hr'g Tr. at 28:1-12.